UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTEBAN ALCAZAR,<br><br>    Plaintiff,<br><br>v.<br><br>CALIFORNIA UNITED MECHANICAL, INC.,<br><br>    Defendant. | Case No. 21-cv-09003-HSG<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO REMAND**<br><br>Re: Dkt. No. 13 |

Esteban Alcazar ("Plaintiff") filed this putative wage and hour class action lawsuit against California United Mechanical, Inc. ("Defendant" or "UMI") in the Santa Clara County Superior Court in November 2021. *See* Dkt. No. 1. UMI removed the case to this Court and Plaintiff now moves to remand it back to state court. Dkt. No. 13 ("Mot."). Plaintiff's motion is fully briefed. *See* Dkt. Nos. 14 ("Opp.") and 15 ("Reply"). The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b). For the reasons below, the Court **DENIES** the motion.

I.   **BACKGROUND**

UMI is an HVAC and plumbing company. *See* Dkt. No. 1-1, Ex. A ("Compl.") ¶¶ 5-7, 18. Mr. Alcazar began working as an hourly-paid non-exempt employee for UMI in 2015. Mr. Alcazar alleges that UMI systematically failed to pay him wages for missed meal periods, missed rest periods, and both regular and overtime hours. *Id.* ¶¶ 24, 35, 37. Mr. Alcazar also alleges that UMI did not keep accurate payroll records or wage statements; reimburse business-related expenses; or allow legally required meal and rest periods. *Id.* ¶¶ 31-33, 36-37. Lastly, Mr. Alcazar alleges that he did not receive wages owed at the time of his discharge or resignation. *Id.* ¶¶ 30, 38. Mr. Alcazar's employment terminated in 2018. *Id.* ¶ 18.

Mr. Alcazar filed this putative class action lawsuit in the Santa Clara County Superior Court in September 2021. *See* Compl. He brings causes of action on behalf of himself and all other similarly situated employees for unpaid overtime, unpaid meal period premiums, unpaid rest period premiums, unpaid wages, untimely final wages, non-compliant wage statements, unreimbursed business expenses, and unfair business practices under California Labor Code and California Business & Professions Code. *See generally id.* In November 2021, UMI removed this action to federal court on the ground that § 301 of the Labor Management Relations Act of 1974 ("LMRA"), 29 U.S.C. § 185, preempts Mr. Alcazar's claims. Dkt. No. 1 ("Notice of Removal") at 3. Mr. Alcazar now moves to remand.

## II.  LEGAL STANDARD

"Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed" to federal court. 28 U.S.C. § 1441(a). Federal district courts are courts of limited jurisdiction, and "[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006) (citation and quotations omitted and alterations in original). Consistent with this foundational principle, there is a "'strong presumption' against removal jurisdiction." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citation omitted).

If the district court lacks jurisdiction over an action, a plaintiff may seek remand to state court. *See* 28 U.S.C. § 1447(c). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus*, 980 F.2d at 566. Accordingly, "[t]he strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009).

In the context of diversity jurisdiction, the Supreme Court has held that the defendant bears the burden of establishing jurisdiction by a preponderance of the evidence. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88 (2014); *see also* 28 U.S.C. § 1446. District courts

in this Circuit have also applied this standard in the context of federal question jurisdiction based on § 301 preemption. *See Franco v. E-3 Sys.*, No. 19-CV-01453-HSG, 2019 WL 6358947, at *1 (N.D. Cal. Nov. 8, 2019) (collecting cases).

## III. DISCUSSION

### A. LMRA Preemption

Under § 301 of the LMRA, "[s]uits for violation of contracts between an employer and a labor organization . . . may be brought in any district court of the United States." 29 U.S.C. § 185(a). As reaffirmed by the Ninth Circuit, the Supreme Court has interpreted the LMRA to authorize federal courts "to create a uniform body of federal common law to adjudicate disputes that arise out of labor contracts." *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1155 (9th Cir. 2019) (citations omitted). "A state rule that purports to define the meaning or scope of a term in a contract suit therefore is pre-empted by federal labor law." *Id.* at 1152 (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210 (1985)). Although federal preemption is a defense that does not generally authorize removal to federal court, the Supreme Court has held that § 301 has such "extraordinary pre-emptive power" that it "converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Metro. Life Ins. v. Taylor*, 481 U.S. 58, 65 (1987).

However, § 301 "cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law." *Curtis*, 913 F.3d at 1152 (quoting *Livadas v. Bradshaw*, 512 U.S. 107, 123 (1994)). Further, "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is preempted by § 301 or other provisions of federal labor law." *McCray v. Marriott Hotel Servs., Inc.*, 902 F.3d 1005, 1009 (9th Cir. 2018) (quoting *Lueck*, 471 U.S. at 211). Claims that have no relationship to a collective-bargaining agreement "beyond the fact that they are asserted by an individual covered by such an agreement are simply not preempted by § 301." *Id.* (citation and quotations omitted).

The Ninth Circuit has employed a two-step test to ensure § 301 preemption "extends only as far as necessary to protect the role of labor arbitration in resolving CBA disputes." *Curtis*, 913 F.3d at 1153 (citation and quotations omitted). First, the court asks whether the asserted cause of

action involves a "right [that] exists solely as a result of the CBA." *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007). "If the right exists solely as a result of the CBA, then the claim is preempted, and our analysis ends there." *Id.* (citing *Lueck*, 471 U.S. at 210). If not, the court proceeds to the second step and asks "'whether a plaintiff's state law right is substantially dependent on analysis of [the CBA],' which turns on whether the claim cannot be resolved by simply 'look[ing] to' versus 'interpreting' the CBA." *Curtis*, 913 F.3d at 1153 (citations and quotations omitted) (alterations in original). "Interpretation" is construed narrowly in this context. *Id.* If claims are dependent on interpretation of the CBA, then the claim is preempted by § 301; if not, the claim may proceed under state law. *Burnside*, 491 F.3d at 1059-60.

### i. Step 1: Whether Plaintiff's Overtime Right Exists Solely as a Result of the CBA

The Complaint alleges that UMI failed to pay overtime wages and therefore violated Cal. Lab. Code § 510 and § 1198, as well as IWC Wage Orders. The question is whether Mr. Alcazar's overtime claim involves a "right [that] exists solely" because of a CBA. *See Curtis*, 913 F.3d at 1152 (citations and quotations omitted and alterations in original).

*Curtis* is dispositive. In *Curtis*, the Ninth Circuit held that overtime claims under Cal. Lab. Code § 510 are controlled by the CBA so long as the CBA satisfies the requirements of Cal. Lab. Code § 514. *Curtis*, 913 F.3d at 1155. Section 514, in turn, provides that:

> Section 510 and 511 do not apply to an employee covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage.

Cal. Lab. Code § 514. So under *Curtis*, the critical question here is whether there is an applicable CBA that satisfies the requirements of § 514.[1] As explained below, the Court finds that there is.

---

[1] Courts have found that if a CBA fulfills the requirements of § 514, the LMRA preempts overtime claims based on not only § 510, but also §§ 1194 and 1198, and Wage Orders containing similar exemption provisions. *Jimenez v. Young's Mkt. Co., LLC*, No. 21-CV-02410-EMC, 2021 WL 5999082, at *10 (N.D. Cal. Dec. 20, 2021) (collecting cases); *Dominguez v. W. States Fire Prot. Co.*, No. 2:21-CV-07319-RGK-MRW, 2022 WL 2234955, at *3 (C.D. Cal. Feb. 2, 2022) ("Because the CBA satisfies the conditions laid out in the Labor Code, it necessarily satisfies those set out in the Wage Order as well."). This Court agrees and will focus its analysis on

Tina Pellegrini, UMI's Director of Human Resources and Corporate Communications, declares (without dispute) that Mr. Alcazar is a member of the Sheet Metal Workers' International Association Local Union No. 104 ("SMWIA"). *See* Dkt. No. 1-2, Declaration of Tina Pellegrini ISO Notice of Removal ("Pellegrini Removal Decl.") ¶ 5. She also confirms that UMI is a member of Bay Area Association of Sheet Metal and Air Conditioning Contractors' National Association, which has a Collective Bargaining Agreement (the "CBA") with Mr. Alcazar's union. *Id.*; *see also id.*, Ex. A ("CBA").

The first condition of § 514 is that the employee must be covered by a valid collective bargaining agreement. That condition is met here, since it is uncontested that Mr. Alcazar's employment was covered by the CBA. *See* Pellegrini Removal Decl. ¶ 5; CBA. The second condition is that the agreement must expressly provide for the wages, hours of work, and working conditions of the employees. Cal. Lab. Code § 514. That condition is also met. *See, e.g.*, CBA at 17-18; *id.* at 18 (specifying that an employee shall be paid 1.5 or 2 times his or her hourly rate for extra hours worked in various circumstances); *id.* at 17-20 (guaranteeing various working conditions such as mealtimes, rest periods, holidays, and limitations on hours).

Finally, the third condition of § 514 is that the CBA must provide "premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage." Cal. Lab. Code § 514. As to the first part of the condition, the CBA provides premium wage rates for overtime hours. *See id.* at 2, 11; *see also* Dkt. No. 14-1, Declaration of Tina Pellegrini ISO Opposition to Plaintiff's Motion to Remand ("Pellegrini Decl.") ¶¶ 6-7; *id.*, Exs. A, B.[2]

The second part of the third § 514 condition requires the CBA to provide for a regular

---

whether the applicable CBA meets the requirements of § 514.

[2] Plaintiff argues that the CBA "simply discusses how wages are calculated" instead of expressly providing for wages. Reply at 5. This is not a meaningful distinction. Though the CBA itself does not explicitly state a wage rate, its addenda specify rate increases to the baseline wages, which are provided in wage and fringe schedules. *See* CBA at 2, 11; Pellegrini Decl., Exs. A, B. In this way, the Court finds, the CBA effectively provides wage rates for overtime hours.

5

hourly rate of pay that is at least 30 percent greater than the state minimum wage. Cal. Lab. Code § 514. Ms. Pellegrini avers without dispute that the minimum wage that applied to UMI as a matter of California law was $10.50 per hour in 2017 and $11.00 per hour in 2018. *See* Pellegrini Decl. ¶ 8; Cal. Lab. Code § 1182.12(b)(1). She also explains that the base rates UMI paid to employees who were members of SMWIA and bound by the same CBA as Mr. Alcazar exceeded these minimum wage rates by more than 30% (e.g., more than $13.65 in 2017 and $14.30 in 2018). Pellegrini Decl. ¶ 8. At the time Mr. Alcazar's employment was terminated, for example, his hourly base rate was allegedly $22.42 per hour, which was more than twice the state minimum wage at the time. *See id.* Based on this evidence, the Court finds that UMI has met its burden of proving by a preponderance of the evidence that the CBA provides for a regular hourly rate of pay that is at least 30 percent greater than the state minimum wage as to Mr. Alcazar and all employees covered by the CBA.

Mr. Alcazar's primary disagreement with this analysis is that, in his view, the CBA does not expressly guarantee sufficient wages to *all employees* covered by the CBA because the wage and fringe schedules "only cover the wages and fringes for predominantly two classifications of employees—Building Trades (BT) and Light Commercial (LC), when other classifications exist such as Residential or Industrial." Reply at 5. His argument relies on a line of district court cases that have reasoned that whether a collective bargaining agreement meets the requirements of § 514 must be determined by reference to *all the covered employees*, rather than just the plaintiff. *See, e.g.*, *Huffman v. Pac. Gateway Concessions LLC*, No. 19-CV-01791-PJH, 2019 WL 2563133, at *4–6 (N.D. Cal. June 21, 2019); *Sarmiento v. Sealy, Inc.*, No. 18-CV-01990-JST, 2019 WL 3059932, at *9 (N.D. Cal. July 12, 2019); *Rooney v. Save Mart Supermarkets*, No. 22-CV-00671-JAM-FEB, 2020 WL 3819481, at *3 (E.D. Cal. July 8, 2020).

But the Court finds those cases inapposite because they all involved clear evidence that the applicable CBAs did not guarantee sufficient wages as to all covered employees. *See, e.g.*, *Huffman*, 2019 WL 2563133, at *5 ("[T]here is little question that the San Jose CBA satisfied Section 514's substantive requirements with respect to [plaintiff] but not with respect to other covered employees."); *Sarmiento*, 2019 WL 3059932, at *12 (the applicable CBA on its face

1 provided for some probationary rates below 130 percent of the state minimum wage); *Rooney*,
2 2020 WL 3819481, at *2 (undisputed that CBA failed to guarantee sufficient wages as to all
3 employees covered). The same is not true here. While Mr. Alcazar contends that the CBA does
4 not provide wages for "other classifications" of employees such as "Residential" or "Industrial,"
5 this contention lacks factual support, since the Wage and Fringe Schedule attached to Ms.
6 Pellegrini's declaration on its face sets rates for wages and fringes "for the Building Trades, Light
7 Commercial, *Residential and Industrial* classifications." *See* Pellegrini Decl., Ex. B at 13 ("Please
8 see the attached files . . . showing the revised rates (effective July 3. 2017) for wages and fringes
9 for the Building Trades, Light Commercial, *Residential and Industrial* classifications.") (emphases
10 added); *see also* Pellegrini Decl. ¶ 7 (stating under penalty of perjury that the wage and fringe
11 schedules "govern the bargained for wage and overtime rates for union members like Plaintiff who
12 were employed by UMI within the relevant time period for Plaintiff's individual claims"). At
13 bottom, even if the Court were to find the reasoning in the *Huffman* line of cases persuasive, the
14 Court finds no basis in the record to credit Mr. Alcazar's assertion that the CBA does not
15 expressly guarantee sufficient wages to all employees covered by the CBA.

16 Thus, the Court finds that the CBA meets the requirements of § 514. This means that Mr.
17 Alcazar's Section 510 claim for overtime is "controlled" by a CBA and is therefore preempted by
18 § 301 of the LMRA. *Curtis*, 913 F.3d at 1155. The Court accordingly has federal question
19 jurisdiction over it.

20 ### B. Supplemental Jurisdiction

21 UMI contends that because the Court has exclusive federal jurisdiction over Mr. Alcazar's
22 overtime claim, the Court should exercise supplemental jurisdiction over the remaining state law
23 claims. Notice of Removal at 7. The Court agrees. Mr. Alcazar's remaining claims under
24 California law arise from the same working conditions and relationship with UMI during the same
25 period as his overtime claim. *See* Compl. ¶¶ 43-101. Therefore, the Court finds that the claims
26 derive from a "common nucleus of operative fact" and thus will exercise supplemental jurisdiction
27 over the remaining claims. *Kuba v. 1-A Agr. Ass'n*, 387 F.3d 850, 855 (9th Cir. 2004)
28 ("Nonfederal claims are part of the same 'case' as federal claims when they derive from a

common nucleus of operative fact and are such that a plaintiff would ordinarily be expected to try them in one judicial proceeding." (citation and quotations omitted)).

## IV. CONCLUSION

The Court **DENIES** the motion to remand and **SETS** a telephonic case management conference on September 13, 2022, at 2:00 p.m. The parties shall submit a joint case management statement by September 6, 2022. Given the age of this case, the parties are advised that the Court intends to promptly set a case schedule that, at minimum, sets the class certification hearing for no later than August 2023. All counsel shall use the following dial-in information to access the call:

Dial-In: 888-808-6929;

Passcode: 6064255

For call clarity, parties shall NOT use speaker phone or earpieces for these calls, and where at all possible, parties shall use landlines.

**IT IS SO ORDERED.**

Dated: 8/10/2022

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge