DOUGLAS HAN (SBN 232858)
dhan@justicelawcorp.com
SHUNT TATAVOS-GHARAJEH (SBN 272164)
statavos@justicelawcorp.com
TALIA LUX (SBN 336074)
tlux@justicelawcorp.com
**JUSTICE LAW CORPORATION**
751 N. Fair Oaks Avenue, Suite 101
Pasadena, California 91103
Telephone: (818) 230-7502
Facsimile: (818) 230-7259

*Attorneys for* Plaintiff

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTEBAN ALCAZAR, individually, and on behalf of other members of the general public similarly situated;<br><br>            Plaintiff,<br><br> v.<br><br>CALIFORNIA UNITED MECHANICAL, INC., a California corporation; and DOES 1 through 100, inclusive<br><br>            Defendants. | Case No.: 3:21-cv-09003-TLT<br><br>Assigned for All Purposes to:<br>Honorable Trina L. Thompson<br>Courtroom 9<br><br>**CLASS ACTION**<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, CONDITIONAL CERTIFICATION, APPROVAL OF CLASS NOTICE, SETTING OF FINAL APPROVAL HEARING DATE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[Declaration of Proposed Class Counsel (Douglas Han); Declaration of Proposed Class Representative (Esteban Alcazar); Declaration of Proposed Settlement Administrator (Julie Green); and [Proposed] Order filed concurrently herewith]<br><br>Hearing Date:  January 16, 2024<br>Hearing Time:  2:00 p.m.<br>Hearing Place:  Courtroom 9<br><br>Complaint Filed:  September 13, 2021<br>Removed:  November 19, 2021<br>FAC Filed:  August 29, 2023<br>Trial Date:  None Set |

**PLEASE TAKE NOTICE** that on January 16, 2024, at 2:00 p.m., or as soon as the matter may be heard, before the Honorable Trina L. Thompson in Courtroom 9 of the United States District Court for the Northern District of California, San Francisco Courthouse, located at 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiff Esteban Alcazar ("Plaintiff") will and hereby does move for an order:

- Granting Preliminary Approval of the class action settlement described herein and as set forth in the Joint Stipulation and Settlement Agreement ("Settlement Agreement," "Settlement," or "Agreement"), attached as **Exhibit 2** to the declaration of Douglas Han, including, and not limited to, the means of allocation and distribution of funds;

- Conditionally certifying the Class for settlement purposes only;

- Appointing Plaintiff as the class representative;

- Appointing Justice Law Corporation as Class Counsel;

- Approving the Notice of Class Action Settlement ("Class Notice") attached as **Exhibit A** to the Settlement Agreement;

- Directing the mailing of the Class Notice via regular First-Class U.S. Mail;

- Approving the proposed deadlines for the settlement administration process;

- Approving CPT Group, Inc. as the Settlement Administrator; and

- Scheduling a hearing to consider whether to grant Final Approval of the Settlement Agreement, at which time the Court will also consider whether to grant Final Approval of the requests for the Attorneys' Fees and Costs, Enhancement Payment, and Settlement Administration Costs, and approval of the allocation of the Private Attorney General Act of 2004 ("PAGA") Payment.

/ / /

/ / /

/ / /

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL**

This motion is based upon the following memorandum of points and authorities; Declaration of Proposed Class Counsel (Douglas Han); Declaration of Proposed Class Representative (Esteban Alcazar); Declaration of Proposed Settlement Administrator (Julie Green); [Proposed] Order filed concurrently with this motion; pleadings and other records on file with the Court in this matter; and such documentary evidence and oral argument as may be presented at the hearing on this motion.


Dated: October 10, 2023                                    **JUSTICE LAW CORPORATION**


                                          By:   /s/ Douglas Han
                                                Douglas Han
                                                *Attorneys for* Plaintiff

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL**

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................ 11

II. BACKGROUND ......................................................................................... 11

III. SUMMARY OF THE SETTLEMENT TERMS ....................................... 11

    a. Deductions from the Settlement............................................................ 11

    b. Calculating Settlement Payments ........................................................ 12

    c. Notice to the Class ............................................................................... 12

    d. Distribution of Funds .......................................................................... 13

    e. The *Cy Pres* Recipient is Appropriate ............................................... 13

    f. Release of Claims ................................................................................ 13

IV. LEGAL STANDARD FOR PRELIMINARY APPROVAL OF A CLASS ACTION SETTLEMENT ..................................................................................... 14

V. THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED. ....................... 15

    a. The Settlement is Fair and Reasonable, and Has No Obvious Deficiencies ....... 15

        i. The Strength of Plaintiff's Case and Risks of Continued Litigation ....... 15

        ii. The Amount Offered in Settlement........................................................ 16

            1. Discount Analysis Justifies the Settlement ................................. 16

            2. The PAGA Payment of $50,000 is Reasonable .......................... 17

        iii. Settlement Resulted from Serious, Informed, Non-Collusive Negotiations and Extensive Investigation and Discovery ............................................ 18

        iv. Experience and Views of Counsel ........................................................ 19

        v. The Presence of a Governmental Participant........................................... 20

        vi. Reaction of the Class Members to the Proposed Settlement ................. 20

    b. The Settlement Treats the Class Fairly ................................................ 20

    c. The Settlement is Within the Range of Approval ................................. 21

        i. The Allocation for the Enhancement Payment is Reasonable ................. 21

        ii. The Allocation for the Attorneys' Fees and Costs is Reasonable............ 22

        iii. Comparable Cases Support the Reasonableness of the Settlement ........ 24

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL**

VI.    CERTIFICATION OF THE PROPOSED CLASS IS APPROPRIATE

       UNDER RULE 23 ............................................................................................ 25

       a.    Numerosity ............................................................................................ 25

       b.    Commonality .......................................................................................... 25

       c.    Typicality ............................................................................................... 26

       d.    Adequacy of Representation ................................................................. 26

       e.    Predominance and Superiority .............................................................. 27

VII.   ADEQUACY OF THE METHOD OF NOTICE ......................................... 27

VIII.  APPOINTMENT OF CPT GROUP, INC. AS THE

       SETTLEMENT ADMINISTRATOR ........................................................... 29

IX.    CAFA NOTICE WILL BE PROVIDED BY DEFENDANT ....................... 30

X.     CONCLUSION ............................................................................................ 31

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL**

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Acosta v. Trans Union, LLC*
    243 F.R.D. 377 (C.D. Cal. 2007) ................................................................. 13

*In re Am. Bank Note Holographics*
    127 F.Supp.2d 418 (S.D.N.Y. 2001) ........................................................... 20

*Amchem Prods. V. Windsor*
    521 U.S. 591 (1197) ..................................................................................... 27

*Armstrong v. Davis*
    275 F.3d 849 (9th Cir. 2001) ................................................................. 25, 26

*In re Badger Mountain Irrigation Dist. Sec. Litig.*
    143 F.R.D. 693 (W.D. Wash. 1992) ............................................................ 25

*Bellinghausen v. Tractor Supply Co.*
    306 F.R.D. 245 (N.D. Cal. 2015) ................................................................. 21

*Blackie v. Barrack*
    524 F.2d 891 (9th Cir. 1975) ....................................................................... 26

*Boyd v. Bechtel Corp.*
    485 F.Supp. 610 (N.D.Cal. 1979) ............................................................... 19

*Churchill Vill., L.L.C. v. GE*
    361 F.3d 566 (9th Cir. 2004) ....................................................................... 28

*Class Plaintiffs v. Seattle*
    955 F.2d 1268 (9th Cir. 1992) ..................................................................... 14

*Coleman v. Jenny Craig, Inc.*
    No. 11cv1301-MMA(DHB), 2014 Dist. LEXIS 26260 (S.D. Cal. Feb. 27, 2014) ........ 16

*In re Corrugated Container Antitrust Litig.*
    643 F.2d 195 (5th Cir. 1981) ....................................................................... 14

*Craft v. Cty. of San Bernardino*
    624 F.Supp.2d 1113 (C.D. Cal. 2008) ......................................................... 23

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

*Detroit v. Grinnell Corp.*

    495 F.2d 448 (2nd Cir. 1974).............................................................................. 17

*Eisen v. Carlisle & Jacquelin*

    417 U.S. 156 (1974)....................................................................................... 29

*In re Gen. Motors Corp. Engine Interchange Litig.*

    594 F.2d 1106 (7th Cir. 1979) ........................................................................ 17

*Hanlon v. Chrysler Corp.*

    150 F.3d 1011 (9th Cir. 1998) ............................................................... *passim*

*Haralson v. U.S. Aviation Servs. Corp.*

    383 F.Supp.3d 959 (N.D. Cal. 2019) ............................................................. 17

*Harris v. Vector Mktg. Corp.*

    No. C-08-5198 EMC, 2011 U.S. Dist. LEXIS 48878 (N.D. Cal. Apr. 29, 2011) ........... 18

*Hesse v. Sprint Corp.*

    598 F.3d 581, 590 (9th Cir. 2010) ................................................................. 14

*Hensley v. Eckerhart*

    461 U.S. 424, 436 (1983)............................................................................... 24

*Hightower v. JPMorgan Chase Bank, N.A.*

    No. CV 11-1802 PSG (PLAx), 2015 U.S. Dist. LEXIS 174314

    (C.D. Cal. Aug. 4,  2015)............................................................................... 22

*Hoffmann-La Roche v. Sperling*

    493 U.S. 165 (1989)....................................................................................... 28

*Hopson v. Hanesbrands Inc.*

    No. CV-08-0844 EDL, 2009 U.S. Dist. LEXIS 33900 (N.D. Cal. Apr. 3, 2009) ........... 18

*Jimenez v. Allstate Ins. Co.*

    765 F.3d 1161 (9th Cir. 2014) ....................................................................... 16

*Linney v. Cellular Alaska P'ship*

    151 F.3d 1234 (9th Cir. 1998) ....................................................................... 17

/ / /

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL**

*Marshall v. Northrop Grumman Corp.*
    469 F.Supp.3d 942 (C.D. Cal. 2020) ............................................................ 14

*Maley v. Del Glob. Techs. Corp.*
    186 F.Supp.2d 358 (S.D.N.Y. 2002).............................................................. 20

*Mazza v. Am. Honda Motor Co.*
    254 F.R.D. 610 (C.D. Cal. 2008) ................................................................... 26

*Murillo v. Pac. Gas & Elec. Co.*
    266 F.R.D. 468 (E.D. Cal. 2010) ................................................................... 16

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*
    221 F.R.D. 523 (C.D. Cal. 2004) ............................................................ 14, 18

*Nordstrom Com. Cases*
    186 Cal.App.4th 576 (2010) .......................................................................... 18

*Paul, Johnson, Alston & Hunt v. Graulty*
    886 F.2d 268 (9th Cir. 1989) ......................................................................... 24

*Rodriguez v. W. Publ'g Corp.*
    563 F.3d 948 (9th Cir. 2009) ......................................................................... 16

*Schaefer v. Overland Express Family of Funds*
    169 F.R.D. 124 (S.D. Cal. 1996) ................................................................... 28

*Staton v. Boeing Co.*
    327 F.3d 938 (9th Cir. 2003) .................................................................... 21, 23

*Stuart v. RadioShack Corp.*
    No. C-07-4499 EMC, 2010 U.S. Dist. LEXIS 92067 (N.D. Cal. Aug. 9, 2010)............ 23

*In re Tableware Antitrust Litig.*
    484 F.Supp.2d 1078 (N.D. Cal. 2007) .................................................... 14, 16

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*
    No. 8:10ML 02151 JVS (FMOx), 2013 U.S. Dist. LEXIS 123298 (C.D. Cal. July 24, 2013) ....................................................................................... 24

*/ / /*

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL**

*Valentino v. Carter-Wallace, Inc.*
    97 F.3d 1227 (9th Cir. 1996) ......................................................................... 25

*Van Vranken v. Atl. Richfield Co*
    901 F.Supp. 294 (N.D. Cal. 1995) ............................................................ 21, 23

*Vinole v. Countrywide Home Loans. Inc.*
    571 F.3d 935 (9th Cir. 2009) ......................................................................... 16

*Villegas v. J.P. Morgan Chase & Co.*
    No. C 09-00261 SBA, 2012 U.S. Dist. LEXIS 114597 ................................. 19

*Vizcaino v. Microsoft Corp.*
    290 F.3d 1043 (9th Cir. 2002) .................................................................. 23, 24

*Wal-Mart Stores, Inc. v. Dukes*
    564 U.S. 338 (2011)........................................................................................ 25

*Washington v. Joe's Crab Shack*
    271 F.R.D. 629 (N.D. Cal. 2010)................................................................... 17

*Wehner v. Syntex Corp.*
    117 F.R.D. 641 (N.D. Cal. 1987)................................................................... 26

*West v. Circle K Stores, Inc.*
     2006 U.S. Dist. LEXIS 42074 (E.D. Cal. June 12, 2006)............................. 22

**Rules**

Federal Rule of Civil Procedure 23(a) ................................................................ 25

Federal Rule of Civil Procedure 23(a)(1) ........................................................... 25

Federal Rule of Civil Procedure 23(a)(2) ........................................................... 25

Federal Rule of Civil Procedure 23(a)(4) ........................................................... 26

Federal Rule of Civil Procedure 23(b) ............................................................... 25

Federal Rule of Civil Procedure 23(b)(3) ........................................................... 27

Federal Rule of Civil Procedure 23(c)(2)(B) ..................................................... 28

Federal Rule of Civil Procedure 23(e) ............................................................... 14

Federal Rule of Civil Procedure 23(g)............................................................... 22

9

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL**

Federal Rule of Civil Procedure 23(h) ................................................................ 23

**<u>Statutes</u>**

Cal. Business & Professions Code § 17200 ....................................................... 16

Cal. Code of Civil Procedure § 1542 ................................................................. 14

Cal. Labor Code § 201 ....................................................................................... 17

Cal. Labor Code § 202 ....................................................................................... 17

Cal. Labor Code § 203 ....................................................................................... 17

Cal. Labor Code § 204 ....................................................................................... 17

Cal. Labor Code § 210 ....................................................................................... 17

Cal. Labor Code § 218.5 .................................................................................... 17

Cal. Labor Code § 221 ....................................................................................... 17

Cal. Labor Code § 226.3 .................................................................................... 17

Cal. Labor Code § 226.7 .................................................................................... 17

Cal. Labor Code § 226 (a) ................................................................................. 17

Cal. Labor Code § 246 ....................................................................................... 17

Cal. Labor Code § 510 ....................................................................................... 17

Cal. Labor Code § 512 (a) ................................................................................. 17

Cal. Labor Code § 552 ....................................................................................... 17

Cal. Labor Code § 558 ....................................................................................... 17

Cal. Labor Code § 1174 (d) ............................................................................... 17

Cal. Labor Code § 1194 ..................................................................................... 17

Cal. Labor Code § 1197 ..................................................................................... 17

Cal. Labor Code § 1197.1 .................................................................................. 17

Cal. Labor Code § 1198 ..................................................................................... 17

Cal. Labor Code § 2698 ..................................................................................... 11

Cal. Labor Code § 2800 ..................................................................................... 17

Cal. Labor Code § 2802 ..................................................................................... 17

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL**

1

## I.   INTRODUCTION

2

3   This motion seeks preliminary approval of a non-reversionary proposed wage-and-hour

4   class action settlement by Plaintiff on behalf of himself and all current and former hourly-paid or

5   non-exempt employees of Defendant California United Mechanical, Inc. ("Defendant") within the

6   State of California at any time during the period from September 13, 2017, through January 15,

7   2023 ("Class," "Class Members," and "Class Period"). At the time of this filing, the number of

8   Class Members is estimated to be one thousand five hundred twenty-one (1,521), which was

9   confirmed by Defendant. (Declaration of Douglas Han in Support of Plaintiff's Motion for

    Preliminary Approval of Class Action Settlement ("Han Decl."), ¶¶ 8-9.)

10  ## II.   BACKGROUND

11  On September 13, 2021, Plaintiff, a former employee of Defendant, filed a wage-and-hour

12  class action lawsuit against Defendant in the Superior Court of California, County of Santa Clara,

13  alleging eight (8) causes of action. (Han Decl., *supra*, at ¶ 10.)

14  After engaging in extensive discovery, investigations, and negotiations, Plaintiff and

15  Defendant (collectively, "the Parties") attended mediation with the mediator Jeffrey A. Ross on

16  November 1, 2022. (Han Decl., *supra*, at ¶ 11.) Under the auspices of the mediator after a full day

17  of mediation, the Parties reached a settlement, and the terms were memorialized in the Settlement

18  Agreement. (*Id.* at ¶ 26; Exhibits 2, 9.)

19  In line with the settlement, on February 6, 2023, Plaintiff provided written notice to the

20  California Labor and Workforce Development Agency ("LWDA") and Defendant. (Han Decl.,

21  *supra*, at ¶ 12; Exhibit 7.)

22  Pursuant to the settlement, the Parties also stipulated to file a First Amended Complaint

23  that added a cause of action for violation of Labor Code sections 2698, *et seq.* (PAGA). (Han

24  Decl., *supra*, at ¶ 13.) Plaintiff subsequently filed his First Amended Complaint on August 29,

25  2023. (*Id.* at ¶ 13; Exhibit 8.)

26  ## III.   SUMMARY OF THE SETTLEMENT TERMS

27  ### a.   Deductions from the Settlement

28  The Parties agreed (subject to the Court's approval) this action be settled and compromised

for the non-reversionary total sum of $995,000 ("Maximum Settlement Amount") which includes: (1) Attorneys' Fees of up to $331,666.66 (1/3 of the Maximum Settlement Amount); (2) Costs not to exceed $20,000; (3) Enhancement Payment of up to $10,000; (4) Settlement Administration Costs of no more than $20,000; and (5) PAGA Payment not to exceed $50,000. (Han Decl., *supra*, at ¶ 27.) There is no injunctive relief and/or other non-monetary relief for the Class as part of the Settlement. (*Id.*)

### b. Calculating Settlement Payments

After all Court-approved deductions from the Maximum Settlement Amount, it is estimated $563,333.34 ("Net Class Settlement Amount") will be distributed to Participating Class Members – with a gross *average* Individual Settlement Payment estimated at $370.37. (Han Decl., *supra*, at ¶ 28.)

Participating Class Members will receive a proportionate share of the Net Class Settlement Amount using the formula set forth in the Settlement Agreement. (Han Decl., *supra*, at ¶ 26; Exhibit 2, §§ 11.6(1)-11.6(3).) Individual Settlement Payments will be allocated as follows: thirty-three and one third percent (33 1/3%) allocated as wages, thirty-three and one third percent (33 1/3%) allocated as interest, and thirty-three and one third percent (33 1/3%) allocated as penalties. (*Id.* at § 14.7)

In addition, the portion of the PAGA Penalties that is to be paid to each Aggrieved Employee shall be determined using the formula set forth in the Settlement Agreement. (Han Decl., *supra*, at ¶ 26; Exhibit 2, *supra*, at §§ 11.6(1), 11.6(4).) All distributions from the PAGA Payment to the PAGA Members will be allocated as one hundred percent (100%) penalties. (*Id.* at § 14.7)

### c. Notice to the Class

Within twenty-one (21) calendar days of the date on which the Court issues an order granting preliminary approval of the Settlement, Defendant will provide the Class Data to the Settlement Administrator. (Han Decl., *supra*, at ¶ 26; Exhibit 2, *supra*, at § 13.2.) Within fourteen (14) calendar days of the receipt of the Class Data, the Settlement Administrator shall mail the Class Notice via regular First-Class U.S. Mail, using the most current, known mailing addresses identified in the Class Data. (*Id.* at § 13.3)

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL**

#### d.  Distribution of Funds

The Maximum Settlement Amount will be funded pursuant to the timeline and manner set forth in the Settlement. (Han Decl., *supra*, at ¶ 26; Exhibit 2, *supra*, at §§ 14.2, 14.3.) All uncashed checks will be distributed to the *cy pres* recipient, University of California Law San Francisco Workers' Rights Clinic ("WRC"). (*Id.* at § 14.5.)

#### e.  The *Cy Pres* Recipient is Appropriate

The WRC is an appropriate *cy pres* recipient for this Settlement. (Han Decl., *supra*, at ¶ 31.) WRC provides free legal assistance to low-income workers with employment-related issues and thus handles subject matters related to the claims that were alleged in this matter. (*Id.*) Plaintiff, Class Counsel, nor Defendant have any connection to or relationship with WRC that could reasonably create the appearance of impropriety. (*Id.* at ¶ 31; Declaration of Estaban Alcazar in Support of Motion for Preliminary Approval ("Alcazar Decl."), ¶ 16.) Mitchell F. Boomer and Janelle J. Sahouria of Defendant's Counsel attended the University of California Law San Francisco, but otherwise have no relationship with WRC. (Han Decl., *supra*, at ¶ 31.)

#### f.  Release of Claims

Upon the Effective Date, Plaintiff and all Participating Class Members will be deemed to have fully, finally, and forever released, settled, compromised, relinquished, and discharged with respect to all the Released Parties any and all Released Class Claims that accrued during the Released Class Claims Period. (Han Decl., *supra*, at ¶ 26; Exhibit 2, *supra*, at § 12.1.)

Upon the Effective Date, Plaintiff, and the State of California (including the LWDA), will be deemed to have fully, finally, and forever released, settled, compromised, relinquished, and discharged with respect to all the Released Parties any and all Released PAGA Claims that accrued during the Released PAGA Claims Period. (Han Decl., *supra*, at ¶ 26; Exhibit 2, *supra*, at § 12.2)

In exchange for the benefits of this Settlement, including the Enhancement Payment, Plaintiff agrees to execute a separate general release of all claims, including a waiver of Civil Code section 1542, which shall become effective on the Effective Date. (Han Decl., *supra*, at ¶ 26; Exhibit 2, *supra*, at § 12.3.)

///

With regards to class action releases, "[A] court may release not only those claims alleged in the complaint and before the court, but also claims which 'could have been alleged by reason of or in connection with any matter or fact set forth or referred to in' the complaint." *(In re Corrugated Container Antitrust Litig.,* 643 F.2d 195, 221 (5th Cir. 1981).) In other words, "'a release of claims that "go beyond the scope of the allegations in the operative complaint" is impermissible.'" (*Marshall v. Northrop Grumman Corp.,* 469 F. Supp. 3d 942, 949 (C.D. Cal. 2020).) The scope of the releases in this case are acceptable because they are limited to the scope of the allegations in the operative complaint. Furthermore, the released claims are "'based on the identical factual predicate as that underlying the claims in the settled class action.'" (*Hesse v. Sprint Corp.,* 598 F.3d 581, 590 (9th Cir. 2010).) Only Plaintiff will execute a separate general release of all claims that goes beyond the scope of allegations in the operative complaint, which is appropriate given the requested $10,000 Enhancement Payment.

## IV. LEGAL STANDARD FOR PRELIMINARY APPROVAL OF A CLASS ACTION SETTLEMENT

Class action settlements require court approval. (Fed. R. Civ. P. 23(e).) Although judicial policy favors settlement of class actions (*Class Plaintiffs v. Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992)), the decision to approve or reject a settlement is within the trial court's discretion, and that decision may be reversed only upon a strong showing of "'clear abuse of discretion.'" (*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998); *Class Plaintiffs*, 955 F.2d at 1276.)

In approving a class action settlement, Courts engage in a two-step process: (1) preliminary approval of the settlement; and (2) a later detailed review after notice is given to class members, to determine whether final approval is appropriate. (*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004).) Courts should grant preliminary approval of a class action settlement "if the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." (*In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).)

/ / /

Furthermore, preliminary approval is appropriate if the settlement is deemed "*potentially* fair". (*Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007) (emphasis in original).) In assessing the fairness of a settlement, district courts may consider the following factors: "(1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." (*Rodriguez v. W. Publ'g Corp.,* 563 F.3d 948, 963 (9th Cir. 2009).) Since some of these factors cannot be evaluated until final approval, "'a full fairness analysis is unnecessary'" (*Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 478 (E.D. Cal. 2010)) at preliminary approval, but an introductory review of the fairness, adequacy, and reasonableness of the Parties' Settlement is provided below to support preliminary approval.

## V.   THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED.

The Settlement resulted from hard-fought litigation and extensive negotiations and is fair and reasonable. Therefore, the Settlement should be preliminarily approved.

### a.   The Settlement is Fair and Reasonable, and Has No Obvious Deficiencies

Using the eight factors listed in Section IV, an initial evaluation of the Settlement's fairness is provided below to support the Parties' view that the Settlement is fair, reasonable, and adequate, and has no obvious deficiencies.

#### i.   The Strength of Plaintiff's Case and Risks of Continued Litigation

Plaintiff's claims are predicated on Defendant's purported: (1) failure to properly calculate overtime wages; (2) failure to pay minimum wages; (3) failure to provide meal and rest breaks and consistently and properly pay applicable premium wages; (4) failure to timely pay wages; (5) failure to issue compliant wage statements; (6) failure to reimburse business expenses; (7) violation of PAGA; and (8) violation of Business & Professions Code sections 17200, *et seq*.  (Han Decl., *supra*, at ¶ 35.) Defendant vehemently denies the theories of liability. (*Id.* at ¶ 36.)

/ / /

While Plaintiff believes the case is suitable for certification, uncertainties with respect to certification are always present. (Han Decl., *supra*, at ¶ 37.) Whether class certification is granted is a matter of the trial court's sound discretion (see *Washington v. Joe's Crab Shack,* 271 F.R.D. 629, 635 (N.D. Cal. 2010).) Different conclusions have been made concerning certification of wage-and-hour claims.[1]

Furthermore, Plaintiff and Class Counsel recognize the expense and length of additional proceedings necessary to continue the litigation through trial and any possible appeals.  (Han Decl., *supra*, at ¶ 33.) Plaintiff and Class Counsel also considered the uncertainty and risk of further litigation, potential outcome, and difficulties and delays inherent in such litigation. (*Id.*)

The Parties reached the Settlement considering the foregoing, and only after significant investigation and evaluation of the relevant policies and procedures, as well as the data produced, permitting Class Counsel to engage in a comprehensive analysis of liability and potential damages. (Han Decl., *supra*, at ¶ 34.)

### ii.  The Amount Offered in Settlement

The Maximum Settlement Amount of $995,000 provides substantial monetary recovery to the Class Members, and is fair, reasonable, and adequate considering the value of the claims and the significant risks of continued litigation.

### 1.  Discount Analysis Justifies the Settlement

The realistic recovery for this case, excluding the civil penalties which could be completely discretionary, is about **$1,748,145.06.** (Han Decl., *supra*, at ¶ 59.) The Maximum Settlement Amount is around fifty-seven percent (56.92%) of the realistic exposure at trial, which is a good settlement. (*Id.*)

The only question at preliminary approval is whether the settlement is within the range of possible approval. (*In re Gen. Motors Corp. Engine Interchange Litig.,* 594 F.2d 1106, 1124 (7th Cir. 1979); *In re Tableware Antitrust Litig.,* 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).) "The

---

[1]    (See e.g. *Coleman v. Jenny Craig, Inc.,* No. 11cv1301-MMA(DHB), 2014 Dist. LEXIS 26260 (S.D. Cal. Feb. 27, 2014) [affirming denial of certification]; *Jimenez v. Allstate Ins. Co.,* 765 F.3d 1161 (9th Cir. 2014) [affirming class certification order]; *Vinole v. Countrywide Home Loans. Inc.,* 571 F.3d 935 (9th Cir. 2009) [affirming denial of certification].)

fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." (*Detroit v. Grinnell Corp.* 495 F.2d 448, 455 (2nd Cir. 1974); see also *Linney v. Cellular Alaska P'ship,* 151 F.3d 1234, 1242 (9th Cir. 1998), "'[I]t is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators.'") This Settlement is in line with the realistic exposure if Plaintiff prevailed at trial and provides a significant recovery for Class Members.

## 2. The PAGA Payment of $50,000 Is Reasonable

The provisions of the Labor Code potentially triggering PAGA penalties in this case include Labor Code sections 201, 202, 203, 204, 210, 218.5, 221, 226(a), 226.3, 226.7, 246, 510, 512(a), 552, 558, 1174(d), 1194, 1197, 1197.1, 1198, 2800, and 2802. (Han Decl., *supra*, at ¶ 46.) Defendant asserted, regardless of the results of the underlying causes of action, PAGA penalties are not mandatory but permissive and discretionary. (*Id.*) Defendant also maintained it had a strong argument it would be unjust to award maximum PAGA penalties given the law's current unsettled state concerning PAGA penalties. (Han Decl., *supra*, at ¶ 46; *Haralson v. U.S. Aviation Servs. Corp.,* 383 F. Supp. 3d 959, 971 (N.D. Cal. 2019) ["'"[N]either the California legislature, nor the California Supreme Court, nor the California Courts of Appeal, nor the [LWDA] has provided any definitive answer" as to what the appropriate standard is for approval of a PAGA settlement.'".)

Furthermore, Defendant argued without stacking and limited to the initial violation, the PAGA penalties would be limited to about **$83,800** (838 employees x $100 penalty for initial violation) on the low end and **$502,800** (838 employees x $100 penalty for initial violation x 6 theories of recovery) on the high end. (Han Decl., *supra*, at ¶¶ 47-49.)

Plaintiff recognized the risk that any PAGA award could be reduced. (Han Decl., *supra*, at ¶ 50.) Many of the causes of action brought were also duplicative of the statutory claims. (*Id.*) Allocating $50,000 to PAGA civil penalties was reasonable given that Defendant is also paying an additional $945,000 in the class settlement. (*Id.*) When PAGA penalties are negotiated in good

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

faith and "there is no indication that [the] amount was the result of self-interest at the expense of other Class Members," such amounts are reasonable.[2]  (Han Decl., *supra*, at ¶¶ 50.)

### iii. **Settlement Resulted from Serious, Informed, Non-Collusive Negotiations and Extensive Investigation and Discovery**

An initial presumption of fairness exists "if the settlement is recommended by class counsel after arm's-length bargaining." (*Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 U.S. Dist. LEXIS 48878, at *8 (N.D. Cal. Apr. 29, 2011) [citation omitted].) Courts give great weight to such recommendations as class counsel is most familiar with the issues underlying the case. (*Nat'l Rural*, 221 F.R.D. at *528.)

Here, the Settlement was reached because of arm's-length negotiations. (Han Decl., *supra*, at ¶ 32.) Before reaching the Settlement, the Parties engaged in research and discovery to investigate and evaluate the strengths and weaknesses of their claims and defenses. (*Id.* at ¶ 34.) Plaintiff propounded one (1) set of form interrogatories, one (1) set of special interrogatories, one (1) set of requests for admission, and one (1) set of requests for production of documents. (*Id.* at ¶ 15.) Thereafter, the Parties met and conferred and agreed to engage in an informal exchange of information and eventually attend mediation. (*Id.*)

Prior to the mediation, Defendant produced several documents relating to its policies, practices, and procedures.  (Han Decl., *supra*, at ¶ 16.) As part of Defendant's production, Plaintiff also reviewed time records, pay records, and information relating to the size and scope of the Class. (*Id.*) Several putative class members were also located and interviewed to attain a better understanding of the extent and frequency of the alleged day-to-day violations. (*Id.*)

Based on the information provided by Defendant and interviews with putative class members, Plaintiff contends – and Defendant denies – Defendant: (1) failed to provide employees with legally mandated meal and rest breaks; (2) failed to pay employees for all hours worked; (3) failed to include non-discretionary bonuses in employees' regular rate of pay for purposes of

---

[2]   (*Hopson v. Hanesbrands Inc.*, No. CV-08-0844 EDL, 2009 U.S. Dist. LEXIS 33900 (N.D. Cal. Apr. 3, 2009), at *24; see e.g. *Nordstrom Com. Cases,* 186 Cal.App.4th 576, 579 (2010), "[T]rial court did not abuse its discretion in approving a settlement which does not allocate any damages to the PAGA claims.")

overtime compensation, premium wages, and sick pay; (4) failed to reimburse employees for necessary business expenses; (5) issued noncompliant wage statements; and (6) is liable for waiting time penalties. (Han Decl., *supra*, at ¶¶ 18-25.)

The Parties attended mediation with an experienced mediator on November 1, 2022. (Han Decl., *supra*, at ¶ 26.) Under the auspices of the mediator, the Parties reached a settlement, and the terms were memorialized in the Settlement Agreement. (*Id.* at ¶ 26; Exhibits 2, 9.)

Though cordial and professional, the settlement negotiations have always been adversarial and non-collusive in nature.[3] (Han Decl., *supra*, at ¶ 32.) At the mediation, the Parties' counsel conducted extensive arm's-length settlement negotiations. *(Id.)* An agreement was ultimately reached after mediation with the assistance of the mediator. (*Id.*) The Settlement was only possible following significant investigation and evaluation of the relevant policies and practices, permitting Class Counsel to engage in a comprehensive analysis of liability and potential damages. (*Id.* at ¶ 34.) This case has reached the stage where the Parties understand "the strength of the case; the reasonableness of the settlement in light of the attendant risks of litigation, and in light of the best possible recovery" sufficient to support the Settlement's reasonableness, adequacy, and fairness. (*Id.* at ¶ 34; *Boyd v. Bechtel Corp.* 485 F.Supp. 610, 617 (N.D.Cal. 1979).)

### iv.  Experience and Views of Counsel

The experience of the Parties' counsel in wage-and-hour employment law and class actions supports the Settlement's fairness. (Han Decl., *supra*, at ¶¶ 2-7; Exhibit 1.) Class Counsel have prosecuted numerous cases on behalf of employees for Labor Code violations and are experienced and qualified to evaluate the class claims, settlement versus trial on a fully informed basis, and viability of the defenses. *(Id.)* This experience instructed Class Counsel on the risks and uncertainties of further litigation and guided their determination to endorse the Settlement.  *(Id.)*

///

---

[3] See *Hanlon*, 150 F.3d at *1027 (affirming approval of settlement after finding "no evidence to suggest that the settlement was negotiated in haste or in the absence of information illuminating the value of plaintiffs' claims."); see also *Villegas v. J.P. Morgan Chase & Co.*, No. C 09-00261 SBA, 2012 U.S. Dist. LEXIS 114597, at *14 (N.D. Cal. Aug. 8, 2012) (asserting "[[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.'")

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL**

### v.   The Presence of a Governmental Participant

As stated in Section II, on February 6, 2023, Plaintiff provided written notice to the LWDA and Defendant of the specific provisions of the Labor Code he contends were violated by Defendant. (Han Decl., *supra,* at ¶ 12; Exhibit 7.) On or about April 12, 2023, the sixty-five (65) days' notice period expired, and the LWDA did not take any action to investigate or prosecute this matter. (Han Decl., *supra,* at ¶ 12.) Thus, Plaintiff exhausted his administrative remedies. Furthermore, the Settlement has been submitted to the LWDA in conjunction with the filing of this motion. (*Id.* at ¶ 26; Exhibit 9.) There is no governmental participant in this matter besides the LWDA, which has so far chosen not to get involved in this matter. (Han Decl., *supra,* at ¶ 12.)

### vi.   Reaction of the Class Members to the Proposed Settlement

The final factor mentioned in assessing the fairness of the settlement – the reaction of class members to the proposed settlement– cannot be determined until the Class Notice has been provided to Class Members, and they have had an opportunity to respond. This information will be provided to the Court in conjunction with the Motion for Final Approval of Class Action Settlement.

### b.   The Settlement Treats the Class Fairly

Additionally, preliminary approval of the Settlement should be granted because it treats Class Members equally. Distribution of the Net Class Settlement Amount will be calculated by dividing the Net Class Settlement Amount by the total number of workweeks for all Participating Class Members during the Class Period (resulting in the "Class Workweek Value"), and then multiplying the Class Workweek Value by the number of workweeks worked by each Participating Member during the Class Period. (Han Decl., *supra,* at ¶ 26; Exhibit 2, *supra,* at § 11.6 (3).)

For purposes of preliminary approval, there is no reason to doubt the fairness of the proposed plan for allocation of the settlement funds. Even at the final approval stage, "[a]n allocation formula need only have a reasonable, rational basis, particularly if recommended by 'experienced and competent' class counsel." (*In re Am. Bank Note Holographics,* 127 F. Supp. 2d 418, 429 (S.D.N.Y. 2001); see also *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002).)

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL**

### c.  The Settlement is Within the Range of Approval

The Maximum Settlement Amount of $995,000 and the Settlement terms for which Plaintiff requests preliminary approval fall within the range of reasonableness, as discussed below.

### i.  The allocation for the Enhancement Payment is reasonable.

Subject to Court approval, Plaintiff will receive an Enhancement Payment of up to $10,000. (Han Decl., *supra*, at ¶ 26; Exhibit 2, *supra*, at § 11.3). The Enhancement Payment will be paid in addition to Plaintiff's Individual Settlement Payment. (*Id.*)

The trial court has discretion to award incentive awards to the class representatives.[4] Courts routinely approve incentive awards to class representatives for their time and efforts, and the risks they undertake on behalf of the class. (*See, e.g.*, *Staton v. Boeing Co.*, 327 F.3d 938, 976-78 (9th Cir. 2003) [discussing cases approving incentive awards in the range of $2,000 to $25,000]; *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. 2015) ["Incentive awards are particularly appropriate in wage-and-hour actions" because named plaintiffs bear "a significant reputational risk by bringing suit against their former employers." (Quotation marks omitted)].)

Here, the contemplated Enhancement Payment is fair and appropriate. Though Class Counsel could not locate a prior order regarding incentive awards for class action settlements by the Honorable Trina L. Thompson, the requested Enhancement Payment is well within the range of incentive awards granted by courts in the Northern District of California. (See *Bolton v. United States Nursing Corp.*, No. C 12-4466 LB, 2013 U.S. Dist. LEXIS 150299 (N.D. Cal. Oct. 18, 2013) [approving $10,000 incentive award where average recovery was $595.91]; *Deluca v. Farmers Ins. Exch.*, No. 17-cv-00034-TSH, 2020 U.S. Dist. LEXIS 154270 (N.D. Cal. Aug. 24, 2020) [approving $10,000 incentive awards]; *Glass v. UBS Fin. Servs.*, No. C-06-4068 MMC, 2007 U.S. Dist. LEXIS 8476 (N.D. Cal. Jan. 26, 2007) [approving $25,000 incentive awards]; *Angell v. City*

---

[4] In assessing the reasonableness of an incentive award, several district courts in the Ninth Circuit have applied the five-factor test set forth in *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995): (1) the risk to the class representative in commencing a class action; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; and (5) the personal benefit, or lack thereof, enjoyed by the class representative as a result of the litigation. *See, e.g.*, *In re Toys "R" Us-Del., Inc. FACTA Litig.*, 295 F.R.D. 438, 470 (C.D. Cal. 2014); *Covillo v. Specialty's Café*, No. C-11-00594 DMR, 2014 U.S. Dist. LEXIS 29837 at *27 (N.D. Cal. Mar. 6, 2014); *Carr v. Tadin, Inc.*, 51 F. Supp. 3d 970, 986 (S.D. Cal. 2014).

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL**

*of Oakland*, No. 13-cv-00190 NC, 2015 U.S. Dist. LEXIS 1037 (N.D. Cal. Jan. 5, 2015) [proposed $9,000 incentive awards noted as within the range of reasonableness].)

Here, the requested Enhancement Payment constitutes 1% of the Maximum Settlement Amount, further supporting its reasonableness. (See *Hightower v. JPMorgan Chase Bank, N.A.,* No. CV 11-1802 PSG (PLAx), 2015 U.S. Dist. LEXIS 174314 at *37 (C.D. Cal. Aug. 4,  2015) ["[E]nhancement awards, which constitute 1.5% of the maximum settlement amount, do not significantly reduce the amount of settlement funds available to the rest of the class."]; *West v. Circle K Stores, Inc.,* 2006 U.S. Dist. LEXIS 42074 at *37-38 (E.D. Cal. June 12, 2006) [finding that an incentive award is fair "given that it will not significant reduce the amount of settlement funds available to the rest of the class."].)

Moreover, Plaintiff spent considerable time and effort to produce relevant documents and past employment records and provide the facts and evidence necessary to attempt to support the allegations. (Han Decl., *supra*, at ¶ 65; Alcazar Decl., *supra,* at ¶¶ 9-10.) Plaintiff was available whenever Class Counsel needed him and worked hard to provide Class Counsel with a complete understanding of the work experience and environment to help benefit the Class. (*Id*.) Accordingly, it is appropriate and just for Plaintiff to receive a reasonable Enhancement Payment for his services on behalf of the Class.

### ii.   The allocation for Attorneys' Fees and Costs is reasonable.

Class Counsel meet the requirements under Fed. R. Civ. P. 23(g). Class Counsel conducted extensive research, investigation, and analysis of the potential value of the claims. (Han Decl., *supra*, at ¶ 34.) Additionally, Class Counsel are highly experienced in wage-and-hour litigation and class action cases as discussed in Section V(a)(iv). Class Counsel have committed and continue to commit significant financial and staffing resources to the representation of the Class. (Han Decl*., supra,* at ¶ 69.) As such, the appointment of Douglas Han, Shunt-Tatavos-Gharajeh, and Talia Lux, of Justice Law Corporation as Class Counsel is appropriate.

The Settlement establishes a Maximum Settlement Amount of $995,000 and provides for Class Counsel to apply for Attorneys' Fees in an amount of not more than one-third (1/3) of the Maximum Settlement Amount or $331,666.66 (Han Decl., *supra*, at ¶ 26; Exhibit 2, *supra*, at §

11.2.) Class Counsel will bring an appropriate motion in advance of the Final Approval Hearing, pursuant to Fed. R. Civ. P. 23(h), and submit supporting evidence and documents in connection with the contemplated request for the Attorneys' Fees and Costs.

Under California and Ninth Circuit precedent, a court has discretion to determine attorneys' fees using the lodestar method or the percentage-of-the-fund method, or a combination of the two methods.[5] District courts may adjust the twenty-five percent (25%) benchmark (observed by the Ninth Circuit) upward or downward if "the percentage recovery would be either too small or large in light of the hours devoted to the case or other relevant factors." (*Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *Staton*, 327 F.3d at 968; *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1048 (9th Cir. 2002).) Courts evaluate fee award requests pursuant to class action settlements on a case-by-case basis, looking at the context of the settlement, and can decide whether an award above the twenty-five percent (25%) benchmark may be warranted.[6] In California, attorneys' fees tend to be awarded above the twenty-five percent (25%) federal benchmark. (*See Van Vranken*, 901 F.Supp. at 297 [holding that fee awards of 30-50% are more typical where the fund is less than $10 million]; *Craft v. Cty. of San Bernardino*, 624 F.Supp.2d 1113, 1127 (C.D. Cal. 2008) [holding that attorneys' fees in cases where the fund is below $10 million are often more than 25%].) Moreover, specifically in the Northern District, a fee award of one-third of the settlement amount has been deemed "well within the range of percentages which courts have upheld as reasonable". (*Stuart v. RadioShack Corp.,* No. C-07-4499 EMC, 2010 U.S. Dist. LEXIS 92067 (N.D. Cal. Aug. 9, 2010).)

/ / /

---

[5] It is appropriate to calculate and award attorneys' fees as a percentage of a monetary funds that has, by litigation, been preserved or recovered for the benefit of others. (*Laffitte v. Robert Half Internat, Inc.,* 1 Cal.5th 480, 486 & 506 (2016); *Wershba v. Apple Comput., Inc.*, 91 Cal.App.4th 224, 254 (2001); *Vizcaino*, 290 F.3d at 1047; *Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)*, 654 F.3d 935, *942 (9th Cir. 2011).) The percentage method is based on the amount of total recovery, as opposed to the total amount of claims made, and is well established in federal courts and the Ninth Circuit. (*Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Williams v. MGM-Pathe Communs. Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997).

[6] *Vizcaino*, 290 F.3d at 1048; *Knight v. Red Door Salons, Inc.,* No. 08-01520 SC, 2009 U.S. Dist. LEXIS 11149 at *18 (N.D. Cal. Feb. 2, 2009); *Romero v. Producers Dairy Foods, Inc.,* No. 1:05cv0484 DLB, 2007 U.S. Dist. LEXIS 86270 at *8-10 (E.D. Cal. Nov. 13, 2007).

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL**

The goal is to award "reasonable compensation for creating a common fund." (*Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989).) In reviewing a fee award request, courts consider the following factors: (1) the results achieved; (2) whether there are benefits to the class beyond the immediate generation of a cash fund; (3) the risks of litigation; (4) the skill required of counsel and quality of the work performed; (5) the contingent nature of the fee and the foregoing by counsel of other work; and (6) the reactions of the class. (See *Vizcaino*, 290 F.3d at 1048-50; *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 8:10ML 02151 JVS (FMOx), 2013 U.S. Dist. LEXIS 123298 at *296-297 (C.D. Cal. July 24, 2013).) Of these factors, the most significant factor is the "degree of success obtained." (*Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983).)

Here, the Attorneys' Fees provided for by the Settlement is reasonable, particularly considering the time and effort expended by Class Counsel. Class Counsel litigated this case for over a year, with the possibility of an unsuccessful outcome and no fee recovery of any kind. (Han Decl., *supra*, at ¶¶ 34, 69.) The ongoing work has been demanding but was ultimately successful in achieving a substantial settlement. Given the strengths and weaknesses of the claims and the risk and expense of further litigation, Class Counsel have achieved an excellent result on behalf of the Class. Considering the amount of the fees to be requested, the work performed, and the risks incurred, the allocations for the Attorneys' Fees and Costs provided for by the Settlement are reasonable and should ultimately be awarded at the final approval stage.

### iii.  Comparable Cases Support the Reasonableness of the Settlement.

The Parties' Settlement is comparable to other settlements that have been granted final approval, supporting its reasonableness. (Han Decl., *supra,* at 60; Exhibit 4). The proposed Settlement is comparable in its released claims, total settlement fund, class size, method of notice, the average recovery per class member, administrative costs, and attorneys' fees and costs. (*Id.*)

/ / /

/ / /

/ / /

## VI. CERTIFICATION OF THE PROPOSED CLASS IS APPROPRIATE UNDER RULE 23

Class certification is appropriate where the plaintiff demonstrates the four requirements of Fed R. Civ P. 23(a) (numerosity, commonality, typicality, and adequacy of representation), and one of the three requirements of Fed R. Civ P. 23(b). (*Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).) The proposed Class meets all of these requirements.

### a. Numerosity

A class is sufficiently numerous if it is "so numerous that joinder of all members is impracticable." (Fed. R. Civ. P. 23(a)(1).) "A reasonable estimate of the number of purported class members" satisfies the numerosity requirement. (*In re Badger Mountain Irrigation Dist. Sec. Litig.*, 143 F.R.D. 693, 696 (W.D. Wash. 1992).)

The proposed Class consists of approximately one thousand five hundred twenty-one (1,521) individuals. (Han Decl., *supra*, at ¶ 62.) The proposed Class is sufficiently numerous, and joinder of all Class Members would be impractical. *(See Mazza v. Am. Honda Motor Co.*, 254 F.R.D. 610, 617 (C.D. Cal. 2008), *rev'd on other grounds*, 666 F.3d 581 (9th Cir. 2012) ("As a general rule, classes of forty or more are considered sufficiently numerous.").)

### b. Commonality

A settlement class has sufficient commonality if "there are questions of law or fact common to the class." (Fed. R. Civ. P. 23(a)(2).) An affirmative showing of at least one common question of law or fact satisfies this requirement.[7] Commonality has been found to exist when there is a common legal issue stemming from divergent factual predicates or a common nucleus of facts leading to different legal remedies. (*Hanlon*, 150 F.3d at 1019.)

Courts generally find commonality where "the lawsuit challenges a system-wide practice or policy that affects all of the putative class members". (*Armstrong v. Davis*, 275 F.3d 849, 868.) Furthermore, divergence in the way in which these practices affect individual Class Members, if

---

[7] *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 359 (2011); *see also Hanlon,* 150 F.3d at 1019 ("All questions of fact and law need not be common to satisfy the rule.").

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL**

any, do not undermine the finding of commonality.[8] Here, the Class Members seek remedies under California's wage-and-hour laws for violations arising from common, uniform, and systematic practices which applied to all Class Members during the Class Period. (Han Decl., *supra,* at ¶ 63.) Accordingly, the commonality requirement is satisfied for settlement purposes.

### c. Typicality

The typicality requirement is satisfied where "the cause of the injury is the same," as here, and the injuries claimed by the named plaintiffs are "similar" to those of unnamed class members. (*Armstrong*, 275 F.3d at 869.) The injuries asserted need not be "identical." (*Id.*) Here, Plaintiff's claims are typical of those of the Class Members, though some factual differences may exist among them, as the claims arise from the same events or course of conduct and are based upon the same legal theories. Given the structure of the Settlement, the proposed Class satisfies the typicality requirement for settlement purposes as Plaintiff's claims arise from the same factual basis and are based on the same legal theories as those applicable to all other Class Members. (*Wehner v. Syntex Corp.*, 117 F.R.D. 641, 644 (N.D. Cal. 1987).) (Han Decl., *supra,* at ¶ 64.)

### d. Adequacy of Representation

Fed. R. Civ. P. 23(a)(4) requires that: (1) class representatives fairly and adequately protect the interests of the class, and (2) class counsel be qualified and competent to conduct the litigation. (*Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.),* 213 F.3d 454, 462 (9th Cir. 2000).) The inquiry considers whether "the named plaintiffs and their counsel have any conflicts of interest with other class members" and "whether the named plaintiffs and their counsel [will] prosecute the action vigorously on behalf of the class." *Hanlon*, 150 F.3d at 1020.

Plaintiff's interests align with those of other Class Members, as he was employed by Defendant within the State of California. (Alcazar Decl., *supra,* at ¶¶ 2, 14.) Neither Plaintiff nor Class Counsel have any conflicts of interest with Class Members. (*Id.* at ¶ 14*;* Han Decl., *supra,* at ¶ 75.) Class Counsel are highly experienced in employment class action and complex wage-and-hour litigation, having handled many cases before and having been appointed class counsel in

---

[8] *Armstrong,* 275 F.3d at 868 (9th Cir. 2001); *Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975), *Certiorari denied*, 429 U.S. 816, 97 S. Ct. 57 (1976).

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL**

many other cases. (Han Decl., *supra,* at ¶¶ 2-7; Exhibit 1.) Plaintiff contends that Class Counsel's experience in litigating similar matters was integral to obtaining the Settlement.

### e. Predominance and Superiority

The proposed Class meets the requirements of Fed. R. Civ. P. 23(b)(3) for settlement purposes because: (1) common questions predominate over questions that affect individual members and (2) class resolution is superior to other available means of adjudication. When assessing predominance and superiority, a court may consider that the proposed class will be certified for settlement purposes only. (*See Amchem Prods. v. Windsor,* 521 U.S. 591, 609 (1197).) Where the matter is being settled, a showing of manageability at trial is unnecessary. (*Id.* at 620.) At this stage, the relevant inquiry is "whether [the] proposed classes are sufficiently cohesive to warrant adjudication by representation." (*Id.* at 623; *see also Hanlon*, 150 F.3d at 1022.)

Here, the proposed Class is sufficiently cohesive to warrant certification. For settlement purposes, common questions of fact and law affecting Class Members predominate over any questions that may affect only individual members. (Han Decl., *supra,* at ¶ 61.) For example, Defendant's alleged failure to properly pay their employees for all hours they worked and/or reported to work and failure to provide compliant meal and rest breaks are alleged to arise from Defendant's uniform policies, practices, and procedures. As such, the questions of fact and law relating to these issues predominate.

Moreover, a class resolution is superior to other available means for the fair and efficient adjudication of the controversy. (*See Hanlon*, 150 F.3d at 1023.) The superiority requirement involves a "comparative evaluation of alternative mechanism of dispute resolution." (*Id.*) Here, the alternative method of resolution is individual claims, subject to proof, for relatively small amounts of damages, which would be uneconomical for potential plaintiffs. (*Id.*) Therefore, a class resolution is superior to any other available methods.

## VII. ADEQUACY OF THE METHOD OF NOTICE

"Adequate notice is critical to court approval of a class settlement under Rule 23(e)." (*Hanlon,* 150 F.3d at 1025.) A class notice must be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through

reasonable effort." (Fed. R. Civ. P. 23(c)(2)(B).) A class notice is adequate if it "'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" (*Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 575 (9th Cir. 2004).) The notice must also be "neutral and objective in tone and should neither promote nor discourage the assertion of claims." (*Schaefer v. Overland Express Family of Funds*, 169 F.R.D. 124, 131 (S.D. Cal. 1996).)

Here, the proposed Class Notice provides the best notice practicable and is adequate. It provides information on, *inter alia*, the nature of the lawsuit, the definition of the Class, the terms of the Settlement, the scope of the Released Class Claims and Released PAGA Claims, the binding effect of the Settlement, and the allocations for the Attorneys' Fees and Costs, the Enhancement Payment, the PAGA Payment, and Settlement Administration Costs. Each Class Member's Class Notice will state their number of workweeks and estimated Individual Settlement Payment. Furthermore, the Class Notice includes Class Counsel's contact information, the address for the Settlement Administrator's website which will list key deadlines and links to important documents in the case, instructions on how to access the case docket via PACER or in person, the date, time, and place of the Final Approval Hearing, and a note advising Class Members to check the Settlement Administrator's website or PACER site to confirm that the date and time of the Final Approval Hearing has not changed. All the information on the Class Notice is "clearly and concisely state[d] in plain, easily understood language." (Fed. R. Civ. P. 23(c)(2)(B).)

The Class Notice also fulfills the requirement of neutrality in class notices. The Class Notice provides a brief, neutral explanation of the case from the perspective of both Parties and recognizes that the Court has not yet granted final approval of the Settlement.[9] It sets forth in an accurate and informative manner the procedures and deadlines governing the submission of requests for exclusion, objections, and disputes regarding the workweeks listed. The proposed Class Notice satisfies all due process requirements and complies with the standards of fairness, completeness, and neutrality.

---

[9] *See Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 174 (1989) ("[C]ourts must be scrupulous to respect judicial neutrality" in overseeing the class action notice process and "avoid even the appearance of judicial endorsement of the merits of the action.")

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL**

Within twenty-one (21) calendar days of the date on which the Court issues an order granting preliminary approval of the Settlement, Defendant will provide the Class Data to the Settlement Administrator. (Han Decl., *supra*, at ¶ 26; Exhibit 2, *supra*, at § 13.2.) All Class Members can and will be identified by Defendant through a review of their business records. Within fourteen (14) calendar days of the receipt of the Class Data, the Settlement Administrator shall mail the Class Notice via First-Class U.S. Mail, using the most current, known mailing addresses identified in the Class Data. (*Id.*) Class Notices will be sent out in an envelope that is designed to enhance the chance that it will be opened. (Han Decl., *supra,* at ¶ 30; Exhibit 3.) The Parties have deemed that translation of the Class Notice to a language other than English is not required to meet the Class's language needs. (Han Decl., *supra,* at ¶ 30.)

Prior to mailing the Class Notices, the Settlement Administrator will perform a search based on the National Change of Address Database ("NCOA") or any other similar services available, such as provided by Experian, for information to update and correct for any known or identifiable address changes. (Han Decl., *supra*, at ¶ 26; Exhibit 2, *supra*, at § 13.3.) If a Class Notice is returned because of an incorrect address, within five (5) calendar days after receipt of the returned Class Notice, the Settlement Administrator will conduct a search for a more current address (using the NCOA and skip tracing) for the Class Member and remail the Class Notice to the Class Member. (*Id.* § 13.4.) at Accordingly, the proposed Class Notice is adequate and is the best notice practicable[10] under Rule 23(c)(2)(B) and should be approved.

## VIII.  APPOINTMENT OF CPT GROUP, INC. AS THE SETTLEMENT ADMINISTRATOR

The Parties selected CPT Group, Inc. ("CPT") as the proposed Settlement Administrator (Han Decl., *supra*, at ¶ 29.) The Parties obtained competing bids from three (3) other settlement administrators, but ultimately chose CPT due to positive experiences from both Parties with CPT's handling of large class sizes. (*Id.*) Furthermore, CPT provided the least expensive bid, which

---

[10] *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, *175-177 (1974) (Individual notice by mail "is clearly the 'best notice practicable' within the meaning of Rule 23(c)(2)" where "all class members [] can be identified with reasonable effort").

would leave the largest Net Class Settlement Amount to distribute to Participating Class Members compared to the other settlement administrators (Han Decl., *supra*, at ¶ 29.)

Settlement Administration Costs are currently estimated to be no more than $20,000 and will be paid out of the Maximum Settlement Amount subject to the Court's approval. (Han Decl., *supra*, at ¶ 29.) Any surplus of the Settlement Administration Costs remaining will become part of the Net Class Settlement Amount. (*Id.*) The Settlement Administration Costs represent just 2% of the Maximum Settlement Amount and are reasonable for the substantial work the Settlement Administrator will do for the estimated 1,521 Class Members. (Declaration of Julie N. Green on Behalf of CPT Group, Inc. ("Green Decl."), ¶ 9)

Class Notices will be sent out via First-Class U.S. Mail, but other methods were contemplated, including email and text message. (Han Decl., *supra*, at ¶ 30.) The Parties ultimately decided that mailing Class Notices would be the most effective since mailing addresses (as compared to current email addresses or phone numbers) of Class Members were deemed most available from Defendant's business records, and the address search methods described in Section VII will help ensure Class Members' addresses are current. (*Id.*) The same reasoning was used to decide upon payment via mailing of Settlement Checks compared to direct deposit. (*Id.*) Based on Defendant's available business records, mailing Settlement Checks was deemed to be more effective than direct deposit, which would require Participating Class Members' current bank account information. (*Id.*)

CPT has several procedures for securely handling class member data, and Class Counsel has an extensive history of engagement with CPT over the last two years. (Green Decl, *supra,* at ¶¶ 6-7.) Plaintiff respectfully request that the Court appoint CPT as the Settlement Administrator.

## IX.   CAFA NOTICE WILL BE PROVIDED BY DEFENDANT.

Class Action Fairness Act of 2005 ("CAFA") notice is required for the Parties' Settlement because it for a "civil action that is removed to a district court of the United States that was originally filed under a State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representatives as a class action." (28 U.S.C. § 1711(2).) CAFA notice will be provided by Defendant. (Han Decl., *supra*, at ¶ 26; Exhibit 2, *supra,* at § 15.2.) Pursuant to 28

U.S.C. § 1715, CAFA notice will be provided not later than ten (10) days after the proposed settlement is filed and will be provided to the to the State Attorney General in each State in which Class Members reside and to the Attorney General of the United States.

**X.** **CONCLUSION.**

For the foregoing reasons, Plaintiff respectfully requests that the Court grant preliminary approval of the Settlement; certify the proposed Class for settlement purposes; appoint Douglas Han, Shunt Tatavos-Gharajeh, and Talia Lux of Justice Law Corporation as Class Counsel; preliminarily approve the allocations for the Attorneys' Fees and Costs, the Enhancement Payment, the PAGA Payment, and the Settlement Administration Costs; appoint Plaintiff as the Class Representative; appoint CPT Group, Inc. as the Settlement Administrator; approve and direct the mailing of the Class Notice to the Class; and schedule a Final Approval Hearing.

Dated: October 10, 2023                    **JUSTICE LAW CORPORATION**

By: /s/ Douglas Han
Douglas Han
*Attorneys for* Plaintiff

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL**