UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTEBAN ALCAZAR,<br><br>    Plaintiff,<br><br>    v.<br><br>CALIFORNIA UNITED MECHANICAL, INC.,<br><br>    Defendant. | Case No. 21-cv-09003-TLT<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING AS MODIFIED MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS; JUDGMENT**<br><br>Re: Dkt. Nos. 48, 49 |

The Court previously granted a motion for preliminary approval of the Class Action Settlement between plaintiff Esteban Alcazar and defendants California United Mechanical, Inc., et. al., on April 9, 2024. ECF 46. As directed by the Court's preliminary approval order, plaintiff, Esteban Alcazar, and the class members, filed their unopposed motion for final settlement approval on July 9, 2024. ECF 48, 50. Thereafter, on July 9, 2024, plaintiffs filed their unopposed motion for attorneys' fees, costs, and service awards. ECF 49, 51.

On August 22, 2024, William Argueta, the Settlement Administrator and the Case Manager for CPT Group, Inc. ("CPT Group"), submitted a declaration indicating that there were only two (2) requests for exclusions from Class Members and no objections to the Settlement or any portion thereof. ECF 52. The Court held a hearing and took arguments from the parties on September 10, 2024.

Having considered the motion briefing, the terms of the Settlement Agreement, the objections and response thereto, the arguments of counsel, and the other matters on file in this action, the Court **GRANTS** the motion for final approval.

The Court finds the settlement fair, adequate, and reasonable. The provisional appointments of the class representative and class counsel are confirmed.

1    The Motion for Attorneys' Fees, Costs, and Incentive Awards is **GRANTED AS MODIFIED**. The
2    Court **ORDERS** that class counsel shall be paid $298,500.00 (30% of the Maximum Settlement
3    Amount) in attorneys' fees; and $16,296.29 in litigation costs; class representative and named
4    plaintiff, Esteban Alcazar, shall be paid $10,000.00 incentive award; and Private Attorneys General
5    Act of 2004 ("PAGA") Payment of $50,000, seventy-five percent (75%) of which ($37,500) will be
6    paid to the California Labor and Workforce Development Agency and twenty-five percent (25%) of
7    which ($12,500) will be paid to the subclass of Class Members employed by Defendant California
8    United Mechanical, Inc. ("Defendant") in California as a non-exempt or hourly employee at any time
9    during the period from July 10, 2020, through January 15, 2023. The agreement does not seek
10   injunctive relief.

**I.    BACKGROUND**

**A.    Procedural History**

Plaintiff filed the putative class action complaint on September 13, 2021, in Santa Clara County (21-CV-388469), against Defendants California United Mechanical, Inc., et. al, alleging eight causes of action: (1) Violation of Labor Code Sections 510 and 1198 (Unpaid Overtime); (2) Violation of Labor Code Sections 226.7 and 512(a) (Unpaid Meal Period Premiums); (3) Violation of Labor Code Sections 226.7 (Unpaid Rest Period Premiums); (4) Violation of California Labor Code Sections 1194 and 1197 (Unpaid Minimum Wages); (5) Violation of California Labor Code Sections 201 and 202 (Final Wages Not Timely Paid); (6) Violation of California Labor Code Section 226(a) (Non-Compliant Wage Statements); (7) Violation of California Labor Code Sections 2800 and 2802; and (8) Violation of California Business & Professions Code Sections 17200, et seq. (Unfair Competition/Unfair Business Practices).

On November 19, 2021, Defendant filed its Notice of Removal pursuant to 28 U.S.C. Sections 1331, 1332, 1441, and 1446. ECF 1, Notice of Removal. The Court has asserted jurisdiction over this action pursuant to section 301 of the Labor Management Relations Act ("LMRA") of 1947, 29 U.S.C. Section 185. ECF 22.

The Plaintiff's first amended complaint (FAC) was filed on August 29, 2023. ECF 37. Plaintiff's amended complaint alleges claims for (1) Violation of California Labor Code Sections 510

1  and 1198 (Unpaid Overtime) (2) Violation of California Labor Code Sections 226.7 and 512(a)
2  (Unpaid Meal Period Premiums); (3) Violation of California Labor Code Section 226.7 (Unpaid Rest
3  Period Premiums); (4) Violation of California Labor Code Sections 1194 and 1197 (Unpaid Minimum
4  Wages); (5) Violation of California Labor Code Sections 201 and 202 (Final Wages Not Timely Paid);
5  (6) Violation of California Labor Code Section 226(a) (Non-Compliant Wage Statements); (7)
6  Violation of California Labor Code Sections 2800 and 2802 (Unreimbursed Business Expenses); (8)
7  Violation of California Labor Code Sections 2698, et seq. (Private Attorneys General Act of 2004);
8  (9) Violation of California Business & Professions Code Sections 17200, et seq.

The parties reached a settlement prior to class certification with the assistance of an experienced mediator Jeffrey A. Ross. The Settlement Agreement, attached hereto as **Exhibit A**, defines the class as: "[A]ll current and former hourly-paid or non-exempt employees of UMI within the State of California at any time during the period from September 13, 2017, to January 15, 2023." ("the Settlement Class"). In its preliminary approval order, the Court conditionally certified the Settlement Class and provisionally appointed Justice Law Corporation as Class Counsel, plaintiff Esteban Alcazar class representative, and CPT Group as the class administrator. ECF 46 at 6-7.

### B. Terms of the Settlement Agreement

Under the terms of the Settlement Agreement, defendant will pay $995,000.00 into a common settlement fund, without admitting liability. This amount includes attorneys' fees and costs, the cost of class notices and settlement administration, the class representative's service award, and payroll taxes on the portion of the settlement payments deemed wages.

#### *1. Attorneys' Fees and Costs*

Under the Settlement Agreement, Plaintiff's counsel agreed to seek up to $331,666.66 in attorneys' fees and no more than $16,296.29 in litigation costs. The Court modifies attorneys' fees to $298,500.00 due to the limited number of motions and discovery conducted and in consideration to the typical percentage of attorneys' fees for an action like this in this district. The common settlement fund also includes a provision for $14,500.00 in settlement administration costs to CPT Group; and up to $10,000.00 to be paid to Plaintiff Esteban Alcazar as an incentive award in exchange for a general release of all claims against defendant.

### *2.  Class Relief*

After deductions from the common fund for fees, costs, and service incentive awards, approximately $655,703.71 will remain to be distributed among the participating class members. This number includes the PAGA Payment of $50,000. Class members will each be paid according to the number of workweeks completed individually in proportion to the total number of workweeks of the entire class during the class period (September 13, 2017 – January 15, 2023). Dividing this amount across the 1518 participating class members yields an average recovery of approximately $431.95 per class member. The Settlement Agreement provides that no amount will revert to defendant. The agreement does not seek injunctive relief.

### *3.  Cy Pres/Remainder*

The Settlement Agreement provides that when checks mailed to participating class members are not redeemed or deposited, any funds from any unredeemed checks will be paid to the *cy pres* recipient, University of California Law, San Francisco, Workers' Rights Clinic. In exchange for the settlement awards, class members will release claims against defendants as set forth in the Settlement Agreement in Section 12.

**C.  Class Notice and Claims Administration**

The Settlement Agreement is being administered by CPT Group, Inc. Following the Court's preliminary approval and conditional certification of the settlement, CPT Group, the Class Administrator, mailed Class Notices to 1,520 Class Members via regular First-Class U.S. Mail. If a Class Notice was returned because of an incorrect address, within five (5) calendar days after receipt of the returned Class Notice, CPT Group conducted a search for a more current address for the Class Member and remailed the Class Notice to the Class Member. CPT Group used the NCOA and skip tracing to attempt to find the Class Member's current address. If CPT Group was unable to locate a better address, the Class Notice was remailed to the original address.

The Class Administrator also established a settlement website (the "Settlement Website") at www.cptgroupcaseinfo.com/CAUnitedMechanicalSettlement, including the settlement notices, the procedures for class members to submit claims or exclude themselves, a contact information page that includes address and telephone numbers for the claim administrator and the parties, the Settlement

Agreement, the signed order of preliminary approval, and other important documents. The Class Administrator also operated a toll-free number for class member inquiries.

Class members were given until August 13, 2024, to object to or exclude themselves from the Settlement Agreement. Out of 1520 total class members 2 persons filed timely requests to opt out of the Settlement Class.

## II.    FINAL APPROVAL OF SETTLEMENT

### A.    Legal Standard

A court may approve a proposed class action settlement of a class only "after a hearing and on finding that it is fair, reasonable, and adequate," and that it meets the requirements for class certification. Fed. R. Civ. P. 23(e)(2). In reviewing the proposed settlement, a court need not address whether the settlement is ideal or the best outcome, but only whether the settlement is fair, free of collusion, and consistent with plaintiff's fiduciary obligations to the class. *See Hanlon v. Chrysler Corp.*, 150 F.3d at 1027. The *Hanlon* court identified the following factors relevant to assessing a settlement proposal: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceeding; (6) the experience and views of counsel; (7) the presence of a government participant; and (8) the reaction of class members to the proposed settlement. *Id.* at 1026 (citation omitted); *see also Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

Settlements that occur before formal class certification also "require a higher standard of fairness." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000). In reviewing such settlements, in addition to considering the above factors, a court also must ensure that "the settlement is not the product of collusion among the negotiating parties." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011).

//
//

**B.     Analysis**

*1.     The Settlement Class Meets the Prerequisites for Certification*

As the Court found in its order granting preliminary approval and conditional certification of the settlement class herein, the prerequisites of Rule 23 have been satisfied purposes of certification of the Settlement Class.  ECF 46.

*2.     Adequacy of Notice*

A court must "direct notice [of a proposed class settlement] in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1). "The class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982).  Adequate notice requires: (i) the best notice practicable; (ii) reasonably calculated, under the circumstances, to apprise the Class members of the proposed settlement and of their right to object or to exclude themselves as provided in the settlement agreement; (iii) reasonable and constitute due, adequate, and sufficient notice to all persons entitled to receive notice; and (iv) meet all applicable requirements of due process and any other applicable requirements under federal law. Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 812 (1985). Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

The Court found the parties' proposed notice procedures provided the best notice practicable and reasonably calculated to apprise Class members of the settlement and their rights to object or exclude themselves.  ECF 48.1.  Pursuant to those procedures, the Class Administrator mailed Class Notices to 1,520 Class Members via regular First-Class U.S. Mail. *Id. ¶* 7. The Class Notices informed Class Members the Response Deadline is August 13, 2024. *Id.* The Class Administrator reports that ninety-three Class Notices were returned by the Post Office. *Id. ¶* 9. CPT Group managed to remail sixty-seven of these Class Notices by locating new addresses via skip tracing or using forwarding addresses. *Id.* Ultimately, there were twenty-six Class Notices left undelivered because CPT Group was unable to locate new addresses. *Id.*

Based upon the foregoing, the Court finds that the Settlement Class has been provided adequate notice.

### 3. *The Settlement Is Fair And Reasonable*

As the Court previously found in its order granting preliminary approval, the *Hanlon* factors indicate the settlement here is fair and reasonable and treats class members equitably relative to one another. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998); ECF 46.

The reaction of the class was overwhelmingly positive. The Court received 0 objections and 2 opt-outs as of the August 13, 2024 deadline. These objections and opt-outs constitute 0.001% of 1520 class members. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *In re Omnivision Techs., Inc.*, 559 F.Supp.2d 1036, 1043 (N.D. Cal. 2008) (citation omitted); *see also Churchill Vill.*, 361 F.3d at 577 (holding that approval of a settlement that received 45 objections (0.05%) and 500 opt-outs (0.56%) out of 90,000 class members was proper).

In its preliminary approval order, the Court approved the proposed plan of allocation. ECF 46. That plan is: Class members will receive a Settlement Share unless they submit a valid and timely Opt-Out Form not later than the date provided on the long-form notice: August 13, 2024. Court finds the plan of allocation to be fair and reasonable and to treat class members equitably and therefore approves that plan of allocation.

### 4. *Objections*

There were no individual objections submitted.

### 5. *Other Findings*

On October 19, 2023, the parties provided the required notice to federal and state attorneys general under the Class Action Fairness Act ("CAFA"), 28 U.S.C. Section 1715(b). ECF 42.1. Notice occurred more than 90 days before the date of this order, as required by 28 U.S.C. Section 1715(d).

### 6. *Certification Is Granted and the Settlement Is Approved*

After reviewing all the required factors, the Court finds the Settlement Agreement to be fair, reasonable, and adequate, and certification of the Settlement Class as defined therein to be proper. Two persons timely excluded themselves from the Settlement Class.

The *cy pres* recipient, University of California Law, San Francisco, Workers' Rights Clinic, is **APPROVED**.

### III.   MOTION FOR ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE AWARDS

Attorneys' fees and costs may be awarded in a certified class action under Federal Rule of Civil Procedure 23(h). Such fees must be found "fair, reasonable, and adequate" in order to be approved. Fed. R. Civ. P. 23(e); *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003). To "avoid abdicating its responsibility to review the agreement for the protection of the class, a district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement." *Id.* at 963. "[T]he members of the class retain an interest in assuring that the fees to be paid class counsel are not unreasonably high," since unreasonably high fees are a likely indicator that the class has obtained less monetary or injunctive relief than they might otherwise. *Id.* at 964.

Class counsel requests an attorneys' fee award of $331,666.67. Based on the detailed time records submitted by counsel, the attorneys' fees sought amount to approximately 60.2% of its lodestar. Defendants do not oppose the fee request.

The Court analyzes an attorneys' fee request based on either the "lodestar" method or a percentage of the total settlement fund made available to the class, including costs, fees, and injunctive relief. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). The Ninth Circuit encourages courts to use another method as a cross-check in order to avoid a "mechanical or formulaic approach that results in an unreasonable reward." *In re Bluetooth*, 654 F.3d at 944–45 (citing *Vizcaino,* 290 F.3d at 1050–51.)

Under the lodestar approach, a court multiplies the number of hours reasonably expended by the reasonable hourly rate. *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016) ("[A] court calculates the lodestar figure by multiplying the number of hours reasonably expended on a case by a reasonable hourly rate. A reasonable hourly rate is ordinarily the 'prevailing market rate [] in the relevant community.'"). Under the percentage-of-the-fund method, courts in the Ninth Circuit

8

"typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure." *In re Bluetooth*, 654 F.3d at 942 (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)). The benchmark should be adjusted when the percentage recovery would be "either too small or too large in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers*, 904 F.2d at 1311. When using the percentage-of-recovery method, courts consider a number of factors, including whether class counsel " 'achieved exceptional results for the class,' whether the case was risky for class counsel, whether counsel's performance 'generated benefits beyond the cash settlement fund,' the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954-55 (9th Cir. 2015) (quoting *Vizcaino*, 290 F.3d at 1047-50. "[T]he most critical factor [in determining appropriate attorney's fee awards] is the degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983).

Using the percentage of recovery method, the Court finds the attorneys' fees sought to be exorbitant and unreasonable absent justification of over 33.3% of the settlement award. The Court has also considered a cross-check using the lodestar method.

The lodestar figure is 766.5 hours at $718.71 per hour for a total of $550,890. Plaintiffs claim hourly rates that are commensurate with their experience and with the legal market in this district. However, Plaintiff cites hourly rates for attorneys in the Los Angeles County area—which is outside of this district. However, in this case, the Court finds percentage of recovery to be a better indicator of reasonableness given the limited number of motions filed and limited discovery. Further, settlement was reached prior to class certification.

Applying the percentage of recovery method, the parties determined the total settlement value to be $995,000. The attorneys' fees requested would come to 33.3% of this total. This amount is greater the 25% benchmark. In this case, Plaintiff filed a Motion to Remand on December 20, 2021 and a reply brief on January 10, 2022. See, ECF 13, 14. The Court denied the motion on August 10, 2022. ECF 22. The parties notified the Court on January 24, 2023 that a settlement had been

9

1  reached and that a Memorandum of Understanding needed to be completed. ECF 27. Thereafter, all
2  efforts were focused on the details of the settlement. The Plaintiff filed a Motion for Settlement and
3  Preliminary Approval on October 10, 2023. ECF 40. There were no other motions filed in the case.
4  Given the limited number of motions filed in this case, the Court finds that the requested attorneys'
5  of 33.3% of the total settlement value are unreasonable.

Based on the foregoing, the Court **MODIFIES** an award of attorneys' fees to the amount of $298,500.00.

### B.   Costs Award

Class counsel is entitled to reimbursement of reasonable out-of-pocket expenses. Fed. R. Civ. P. 23(h); *see Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (holding that attorneys may recover reasonable expenses that would typically be billed to paying clients in non-contingency matters). Costs compensable under Rule 23(h) include "nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Here, class counsel seeks reimbursement for litigation expenses, and provides records documenting those expenses, in the amount of $16,296.29. The Court finds this amount reasonable, fair, and adequate.

### C.   Incentive Award

The district court must evaluate named plaintiff's requested award using relevant factors including "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation." *Staton*, 327 F.3d at 977. "Such awards are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958-959 (9th Cir. 2009). The Ninth Circuit has emphasized that district courts must "scrutiniz[e] all incentive awards to determine whether they destroy the adequacy of the class representatives." *Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1163 (9th Cir. 2013).

Here, the plaintiff came forward to represent the interests of 1520 others. Plaintiff compiled documents and answered questions in response to discovery requests, regularly corresponded with

counsel telephonically and by email, and took the substantial risk of litigation which, at a minimum, involves a risk of losing and paying the other side's costs. In total, Plaintiff spent over sixty-five hours meeting with counsel concerning the case and performing responsibilities as a class representative. Because the laws are not self-enforcing, it is appropriate to give incentives to those who come forward with little to gain and at personal risk and who work to achieve a settlement that confers substantial benefits on others. Thus, the Court approves the requested incentive award payment for Plaintiff Esteban Alcazar.

### IV. CONCLUSION

Based upon the foregoing, the motion for final approval of class settlement is **GRANTED**. The motion for attorneys' fees, costs, and service awards is **GRANTED AS MODIFIED**. Amounts are fair and reasonable as negotiated with the assistance of mediator Jeffrey Ross. Class Counsel is awarded **$298,500.00** in attorneys' fees and **$16,269.29** in litigation costs. CPT Group is awarded $**14,500.00** in settlement administration costs. Plaintiff Esteban Alcazar is granted an incentive award of **$10,000.00**. Further, the Court grants PAGA Payment of **$50,000**, seventy-five percent (75%) of which (**$37,500**) will be paid to the California Labor and Workforce Development Agency and twenty-five percent (25%) of which (**$12,500**) will be paid to the subclass of Class Members employed by Defendant in California as a non-exempt or hourly employee at any time during the period from July 10, 2020, through January 15, 2023.

Without affecting the finality of this order in any way, the Court retains jurisdiction of all matters relating to the interpretation, administration, implementation, effectuation and enforcement of this order and the Settlement.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that final judgment is **ENTERED** in accordance with the terms of the Settlement, the Order Granting Preliminary Approval of Class Action Settlement filed on April 9, 2024 (ECF 46), and this order. This document will constitute a final judgment (and a separate document constituting the judgment) for purposes of Rule 58, Federal Rules of Civil Procedure.

The proposed order is hereby adopted, except as modified herein. (ECF 48-3).

1     The parties shall file a post-distribution accounting in accordance with this District's
2 Procedural Guidance for Class Action Settlements no later than **March 10, 2025**. The Court **SETS** a
3 compliance deadline on **April 15, 2025,** on the Court's 2:00 p.m. calendar to verify timely filing of
4 the post-distribution accounting.

5     This terminates Docket Nos. 48 and 49.

6     IT IS SO ORDERED.

7 Dated: September 11, 2024

8                                              _____
                                               TRINA L. THOMPSON
9                                              United States District Judge